## Ruth et al. v. Robinson et al.

(Decided June 1, 1937.)

THOMAS S. YATES for appellants.

FIELDS & LEWIS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming in part, reversing in part.

Appellees are the owners of a warehouse in the

city of Grayson, Carter county, Ky. In January, 1931, S. L. Combs rented space in the warehouse at the rate of $7.50 per month to store certain road machinery. The rent was not paid, and on January 18, 1934, appellees procured of the judge of the Grayson police court a distress warrant reciting that it appearing from. the affidavit of George F. Robinson that "S. L. Combs, owes it (the Ware House Company) for the rent of its warehouse in Carter County, payable in money, $277.50, in installments of $7.50 each, which became due on the 15th day of January, 1934. * * *" The warrant was addressed to the town marshal of the city of Grayson and commanded him to distrain the personal property of S. L. Combs or so much thereof as will satisfy said debt with interest, etc.

Combs was duly notified as required by the statute, but made no defense to the distress warrant. Thereafter in due time the marshal of the city of Grayson levied the distress warrant upon the road machinery and advertised it for sale as required by the statute, and on February 3, 1934, the marshal sold the machinery in satisfaction of the rent and appellants became the purchaser thereof and executed bond therefor in the sum of $277.50 with interest and costs payable three months from date of sale. Appellants claiming that they were informed that the sale was void, refused to pay the bond at maturity, and offered to return the machinery to appellees, which offer was rejected, and thereupon appellees procured an execution from the police judge on the sale bond and placed it in the hands of the sheriff of Carter county for execution. On June 30, 1934, appellants filed their petition in equity in the Carter circuit court to enjoin the sheriff from levying the execution on their property, alleging that the sale under the distress warrant was void and of no effect and that they did not receive title to any of the machinery sold under said sale. At the time of the filing of the suit appellants procured a temporary restraining order restraining the sheriff from levying the execution. Answer and subsequent pleadings were filed and the issues made and upon a submission of the case the circuit court entered judgment dismissing appellants' petition and dissolving the temporary injunction and entered judgment against appellant on the face of the injunction bond which they executed at the time they procured the temporary restraining order, which

bond recited, in substance, that if the injunction therein granted be dissolved, appellants would satisfy the execution for $291.76, together with $21 costs, amounting in the aggregate to the sum of $312.76, with 6 per cent. interest per annum from June 30, 1934, until paid, with all costs expended, to which judgment appellants excepted and prayed an appeal, which was granted.

Appellants are insisting that the judgment should be reversed because (1) there is no relation of landlord and tenant and the court had no jurisdiction to issue the warrant; (2) the purported affidavit is not signed or sworn to and is insufficient to support the warrant; (3) the purported affidavit shows on its face that more than six months' rent was due and for this reason the warrant was void; (4) the police court of the city of Grayson (a city of the fifth class) did not have jurisdiction to issue the execution because the amount in controversy exceeded $100; and (5) the court erred in rendering judgment against appellants upon the face of the injunction bond.

We will discuss these points in the order named.

(1) Section 2299, Kentucky Statutes, reads:

"Rent may be recovered by distress, attachment or action, and shall bear six per cent (6%) interest per annum from the time it is due."

The statute does not restrict the remedy of distress to any particular kinds of rents.

In Mitchell v. Franklin, 3 J. J. Marsh. (26 Ky.) 477, it is held that the collection of rent by distress is allowable for rent in arrear upon any demise, lease, or contract whatsoever when such rent is payable in money. That opinion gives an interesting statement or history of the ancient common-law rule and the more modern rule brought about by an ancient British statute and early statute of our parent state (Virginia) and by the Kentucky statutes enacted in 1811. We quote from that opinion:

"Although the amount in controversy is inconsiderable, yet the principles involved, are of great importance to society, and require an examination, and exposition of the statutes regulating distress for rent. The right of the landlord to distrain for rent in arrear was incident, by the principles of

the common law, to every rent service, and to most cases of rent charge because, in these, the power to distrain was generally reserved on the part of landlord in the deed, creating the tenancy. By the operation of several statutes in England, the power to distrain for rent, was at length extended, so as to embrace cases of rent seck. The principles and policy of these British statutes, which greatly mitigated the riguor of the common law remedy, by distress, have been adopted, according to the learned chancellor, Kent as the basis of the American law, in most, if not in all the states, in which distress for rent is tolerated.

"The act of 1748, of our parent state, II. Digest, 1062, is predicated upon the opinion, that distress for rent in arrear is allowable 'upon any demise, lease or contract whatsoever,' by which rent is reserved, and the general tenor of our own statute of 1811, shews, that it was the intention of the legislature, to authorize a distress for rent, in all cases, where the rent reserved, is payable in money. So that now, the distinctions which were anciently made between the various kinds of rent, and the remedies given to enforce payment, suitable to the particular nature of the rent are more matters of curious learning, than of practical utility."

It appears from our present statute and under the opinion, supra, that appellees were entitled to the remedy of distress to collect their rent. The terms "landlord" and "tenant" as now used mean lessor and lessee of any property and these terms are not necessarily restricted to lands and tenements as they were under the ancient common law, as pointed out in the opinion, supra.

(2) This question involves the affidavit, or paper purporting to be an affidavit, upon which the distress warrant is issued. The affidavit and jurat thereto reads as follows:

"Geo. F. Robinson says that he is one of the partners of and agent for the Farmers Tobacco Whse. Co. and that S. L. Combs owes the Farmers Tobacco Warehouse Co. Ky. for the rent of its warehouse in Grayson, Carter County, Kentucky,

and payable in money, $277.50 in installments of $7.50 each, which became due on January 15, 1934.

"Farmers Tobacco Whse. Co.,

"By ——————

"Subscribed and sworn to before me by Geo. F. Robinson, one of the partners and agent for the Farmers Whse. Co., this 18th day of January, 1934.

"————————, Notary Public."

It will be seen that George F. Robinson, member of the firm of the appellee Farmers Tobacco Warehouse Company, who purports to have made the affidavit, did not sign same and if the notary public swore him to the affidavit, he, the notary, failed to sign the jurat thereto. If this question had been raised in the lower court and at the proper time, a different question would have been presented.

Appellants filed their original petition on June 30, 1934, and on the 11th day of July, 1934, they filed their amended petition, wherein they stated, among other things, that one of the defendants, George F. Robinson, made an affidavit before the police judge of the town of Grayson for a distress warrant, and they filed a copy of the affidavit set out above for identification and made it a part of their amended petition, and alleged that the police judge wrongfully issued the said distress warrant upon said affidavit "because more than six months of rent was due and that the distress warrant was void upon that ground." They also filed a copy of the distress warrant issued pursuant to the purported affidavit and made further allegations amplifying their original petition, and based their action upon the distress warrant and the affidavit upon which it issued, but nowhere in the record before us does it appear that they complained of the affidavit not being signed by the member of the firm who procured it, nor that the notary failed to sign it, and this question was raised for the first time in brief of counsel on this appeal. The issues made were based upon the distress warrant and the purported affidavit which all parties treated as being sufficient, and it was likewise treated by the chancellor below and the case was tried and disposed of on the merits under the issues made and the pleadings presented, including the purported affidavit

which appellants themselves filed and pleaded as the basis of their action.

In these circumstances, we think it is now too late for appellants to complain of their own pleadings relied on by them.

(3) It is insisted that a large portion of the rent distrained was more than six months past due and that the statute limits rent recoverable by distress to such rents maturing six months previous to the issuance of the distress warrant. The affidavit and the distress warrant both stated that the rents sued for were due January 15, 1934, three days before the issuance of the distress warrant. However, the evidence tends to show that the rent was payable monthly at $7.50 per month, but it is not clear from either the distress warrant or the evidence whether each month's rent was treated as independent debt or obligation. However, if it be conceded for the sake of the argument, that a part of the rent was more than six months past due, such would not have rendered the warrant and proceedings thereon void, but erroneous only, a matter which could have been taken advantage of by S. L. Combs, the defendant in the distress warrant, all of which he waived by failing to make any defense to the warant, hence it cannot now be collaterally attacked.

(4) Complaint is directed to the jurisdiction of the police court to issue the execution because the amount in controversy exceeded $100. The remedy of collection of rent by attachment provided in sections 2302 and 2303 of the Kentucky Statutes must not be confused with the remedy of distress provided in sectoin 2309. Section 2303 provides that:

"All attachments issued under this chapter, for a sum of fifty dollars or less, exclusive of interest and costs, shall be returned before the officer issuing the attachment; and all those for a sum exceeding fifty dollars and not exceeding two hundred shall, at the option of the party attaching, be returned before either the quarterly or circuit court of the county whence it issued; if over two hundred dollars, to the circuit court; and in either case the proceedings thereon shall be the same as on other attachments according to the Civil Code."

Section 2309, relating to the collection of rents by distress, reads as follows:

"Properly distrained for rent, or so much thereof as will be sufficient to make satisfaction in full, shall be sold by the officer, unless within ten days from the day of levy the demand be replevied, or by other legal procedure a sale is presented; the officer making the distress shall advertise the time and place of the sale in the same manner that sheriffs are directed to advertise personal property sold under execution, but shall not be advertised in a newspaper, though a local law may so require in regard to sales under execution, unless requested in writing by the defendant, and shall sell so much thereof as will satisfy the rent and all interest and costs to the highest bidder, on a credit of three months, with interest from the date; and take from the purchaser bond with good surety for the sale money, which, at maturity, if the same be not satisfied, the officer before whom it is returned, or clerk of the circuit court, as the plaintiff may direct, shall issue execution directed to any county which the plaintiff may designate."

It is seen that under the last section quoted above there appear no provisions in respect to the jurisdiction of the court before which the distress warrant shall be returned, and in this respect it differs radically from section 2303 relating to the remedy of attachment. The right of attachment is incidental to the collection of any debt and, perhaps other demands, and when that remedy is resorted to for the collection of rents the Legislature saw fit to limit the jurisdiction of an inferior court before which the attachment shall be returned. The right of attachment is not restricted to the collection of rents only, while the right of distress is peculiarly applicable only to the collection of rents, and it seems to be a special or favorite remedy of the landlord for the collection of rent and, nothing appearing in the statute, expressly or by necessary implication, restricting the jurisdiction of the court before which a distress warrant shall be returned, we are unauthorized to amend the statute by reading into it such a provision.

In 23 C. J. p. 362, sec. 115, the rule is stated thus:

"The power of the state courts in general to issue executions is derived from statutory enactments, and, in the absence of statute, is conferred by the common law. A court competent to pro-

nounce judgment is generally competent to issue execution, and the writ must be issued out of the court which rendered the judgment, unless some other court is authorized by statute to issue it, or unless the record has been removed into another court, in which case the court having the record may issue the writ. Writs improperly issued out of a court other than that which rendered the judgment, or into which the record has been removed, are void.''

Our conclusion is that the judge of the police court of the city of Grayson had jurisdiction and authority to issue the execution. From what has been said, it follows that the sale bond executed by appellants is valid and they are bound for the purchase price of the property.

(5) Lastly it is insisted that the court erred in rendering judgment against appellants upon the face of the injunction bond executed when the temporary restraining order was obtained. This presents a more serious question. The court rendered judgment upon the face of the bond executed by appellants when they obtained the restraining order or temporary injunction, amounting to $312.76, with interest on said amount from June 30, 1934, the date of issuance of the restraining order. We think this was error. We find no provisions of the Code authorizing such method of assessing damages upon the dissolution of an injunction bond executed to enjoin the collection, payment, or use of money. Upon a return of the case the court will ascertain the damages if any, and render judgment therefor, under the provisions of section 295, of the Civil Code of Practice.

Wherefore the judgment is affirmed in so far as it dissolved the restraining order and refused an injunction, but reversed as to the character of judgment rendered, and remanded for proceedings consistent herewith.

Whole Court sitting.